**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Case: 1:23−mc−00086
Assigned To : Boasberg, James E.
Assign. Date : 8/29/2023
Description: Misc.

IN RE PRESS APPLICATION FOR
UNSEALING OF IN RE GRAND JURY
SUBPOENA, GJ 42-67

Case No. _____

Hearing Requested

**PRESS APPLICATION TO UNSEAL**
***IN RE GRAND JURY SUBPOENA*, GJ 42-67**

Pursuant to Local Criminal Rules 57.6 and 6.1, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Insider Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, TEGNA Inc., Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post (together, the "Press Coalition") respectfully move to unseal *In re Grand Jury Subpoena GJ 42-67*, No. 23-gj-46 (D.D.C.).

The Government has officially acknowledged and disclosed information about this matter in the course of raising concerns over potential conflicts in Stanley Woodward's representation of Waltine Nauta and his representation of potential Government witnesses in *United States v. Trump*, No. 23-cr-80101 (S.D. Fla.) (the "Florida case"). The Government also disclosed that Woodward moved to unseal this matter, that the parties agree they should be permitted to disclose this matter in the Florida case, and that Chief Judge James E. Boasberg has already authorized the Government to disclose this matter in the Florida case.

Undersigned counsel contacted the Government and counsel for Trump Employee 4 on August 28, 2023, to inquire about their positions on this Application.  The Government stated that it opposes the requested relief.  Counsel for Trump Employee 4 had not yet responded by the time of filing.

Therefore, and for the reasons set forth in the accompanying Memorandum of Points and Authorities, the Press Coalition respectfully requests that the Court unseal all briefing, orders and hearing transcripts filed or otherwise submitted in *In re Grand Jury Subpoena GJ 42-67*, No. 23-gj-46 (D.D.C.), as well as the docket listing all filings in the matter.

Dated:  August 29, 2023                 Respectfully submitted,

                                        BALLARD SPAHR LLP

                                        /s/ *Charles D. Tobin*
                                        Charles D. Tobin (#455593)
                                        Maxwell S. Mishkin (#1031356)
                                        Chad R. Bowman (#484150)
                                        Lauren Russell (#1697195)
                                        1909 K Street NW, 12th Floor
                                        Washington, DC 20006
                                        Tel: (202) 661-2200
                                        Fax: (202) 661-2299
                                        tobinc@ballardspahr.com
                                        mishkinm@ballardspahr.com
                                        bowmanchad@ballardspahr.com
                                        russelll@ballardspahr.com

                                        *Counsel for the Press Coalition*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE PRESS APPLICATION FOR
UNSEALING OF IN RE GRAND JURY
SUBPOENA, GJ 42-67

Case No. _____

Hearing Requested

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRESS
## APPLICATION TO UNSEAL *IN RE GRAND JURY SUBPOENA, GJ 42-67*

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

## PRELIMINARY STATEMENT

Pursuant to Local Criminal Rules 57.6 and 6.1, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Insider Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, TEGNA Inc., Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post (together, the "Press Coalition") respectfully move to unseal *In re Grand Jury Subpoena GJ 42-67*, No. 23-gj-46 (D.D.C.) (*In re Grand Jury Subpoena*).

The Government has officially acknowledged and disclosed information about this matter in the course of raising concerns over potential conflicts in Stanley Woodward's representation of Defendant Waltine Nauta and his representation of Government witnesses, including one identified as "Trump Employee 4" in the Superseding Indictment, in *United States v. Trump*, No. 23-cr-80101 (S.D. Fla.) (the "Florida case"). In the Florida case, the Government has also alerted the Honorable Aileen M. Cannon that the Honorable James E. Boasberg, Chief Judge of this District, authorized the Government to disclose "all information related to the conflicts hearing conducted by this Court on June 30 and July 5, 2023." *See* July 31, 2023 Minute Order, *In re Grand Jury Subpoena*; *see also* Notice of Filing Ex. 1, *Florida case*. Additionally, according to filings submitted in the Florida case, Woodward, counsel for Nauta and "Trump Employee 4," has also asked that the *In re Grand Jury Subpoena* proceedings be unsealed, and the Government "does not oppose the public filing in the Florida case of materials related to the

1

conflicts hearing in this matter" except for redactions to one individual's name.  *See In re Grand Jury Subpoena*, Resp. to Mot. for Disclosure (Aug. 25, 2023); *see also* Notice of Filing Ex. 1, *Florida case*.

Pursuant to the First Amendment and common law rights of access, the Press Coalition respectfully requests that the Court unseal *In re Grand Jury Subpoena* and provide public access to all briefing, orders, and transcripts submitted in the matter, as well as the complete case docket.

## BACKGROUND

A.     **The Indictments**

On June 8, 2023, a federal grand jury in Florida indicted former President Donald J. Trump on 37 counts arising from the relocation of "hundreds of classified documents" from the White House to his South Florida resort and club, Mar-a-Lago.  *See* Indictment, *Florida case*, ECF No. 3 ¶¶ 1-4.  Specifically, Trump faces charges under the Espionage Act for alleged willful retention of national defense information, concealing documents, making false statements, and conspiracy to obstruct justice.  *See generally id.*  Waltine Nauta, Trump's personal aide, is also charged on several counts, including conspiring with Trump to obstruct justice.  *Id.*

On July 27, 2023, the Florida grand jury issued a Superseding Indictment naming as a third defendant Carlos de Oliveira, the Mar-a-Lago property manager, and adding several more counts against Trump and Nauta, including attempting to "alter, destroy, mutilate, or conceal evidence" and inducing someone else to do so.  *See* Superseding Indictment, *id.*, ECF No. 52. According to the Superseding Indictment, following the Government's service of a draft subpoena demanding production of surveillance camera video on Trump's attorney, Trump, Nauta, and de Oliveira requested that "Trump Employee 4," the Director of Information

Technology at Mar-a-Lago, "delete security camera footage at The Mara-Lago Club to prevent the footage from being provided to a federal grand jury." *Id.* at 49 (Count 40).

**B.     The Government's Motion For A *Garcia* Hearing**

Stanley Woodward appeared as Nauta's counsel at Nauta's initial appearance on June 13, 2023, and Woodward filed a motion to appear *pro hac vice* in the matter on July 6, 2023. *See* Minute Order of June 13, 2023, *Florida case*; Mot. to Appear Pro Hac Vice, *id.*, ECF No. 52.

On August 2, 2023, the Government moved for a hearing—known in the Eleventh Circuit as a *Garcia* hearing—"to conduct an inquiry regarding potential conflicts of interests that may arise from attorney Stanley Woodward, Jr.'s prior and current representation of three individuals the Government may call to testify at the trial of his client Waltine Nauta." *See* Mot. for *Garcia* Hr'g, *id.*, ECF No. 97. The Government stated that Woodward "has represented at least seven other individuals who have been questioned in connection with the investigation" including "the director of information technology for Mar-a-Lago (identified in the superseding indictment as Trump Employee 4) and two individuals who worked for Trump during his presidency and afterwards (hereafter Witness 1 and Witness 2)." *Id.* at 2. The Government noted that it "provide[d] additional information relevant to this motion in a sealed supplement," which it filed with a sealed motion for leave. *Id.* at 2 n.2; *see also* ECF Nos. 95 & 96.

On August 7, 2023, Judge Cannon struck the sealed motion for leave and the sealed supplement on the grounds that they "plainly fail to satisfy the burden of establishing a sufficient legal or factual basis to warrant sealing the motion and supplement," and Judge Cannon further directed Nauta to file a response addressing "the legal propriety of using an out-of-district grand jury proceeding to continue to investigate and/or to seek post-indictment hearings on matters pertinent to the instant indicted matter in this district." Order, *Florida case*, ECF No 100. In

response, Nauta submitted that he "does not oppose an *ex parte* under seal inquiry by the Court

of Mr. Nauta to assure the Court that Mr. Nauta has been advised of all his rights, including the

right to conflict-free counsel; but Mr. Nauta does reserve the right to seek the exclusion of any

testimony by Trump Employee 4 at a trial in this matter and further objects to the necessity of the

Court conducting any inquiry of any mere witnesses that may also be represented by defense

counsel."  Opp. to Mot. for *Garcia* Hr'g, ECF No. 126.

       In its reply, the Government disclosed that Case No. 23-gj-46 in the U.S. District Court

for the District of Columbia also gave rise to concerns over a potential conflict of interest

between Woodward's representation of Nauta and "Trump Employee 4," who denied having

information about any obstruction when represented by Woodward, but who testified, after

obtaining new counsel, that de Oliveira asked him to delete Mar-a-Lago security footage.  *See*

Reply in Further Supp. of Gov't's Mot. for *Garcia* Hr'g, Dkt. 129 at 3-4.  The reply explained:

> On June 27, 2023, consistent with its responsibility to promptly
> notify courts of potential conflicts, and given the prospective
> charges Trump Employee 4 faced in the District of Columbia, the
> Government filed a motion for a conflicts hearing with the Chief
> Judge of the United States District Court for District of Columbia
> (Boasberg, C.J.), who presides over grand jury matters in that
> district. The Government notified this Court on the same day, by
> sealed notice, of the filing in the District of Columbia. *See* ECF
> Nos. 45, 46.  Mr. Woodward raised no objection to proceeding in
> the District of Columbia regarding Trump Employee 4.  In fact, he
> responded that he "welcome[d] the Court's inquiry into [his]
> representation of" Trump Employee 4, Response at 1, *In re Grand
> Jury Subpoena*, No. 23-GJ-46 (D.D.C. June 30, 2023), but asserted
> that he had no "information to support the Court's claim that
> [Trump Employee 4] has provided false testimony to the grand
> jury," and that "even if [Trump Employee 4] did provide
> conflicting information to the grand jury such that could expose
> him to criminal charges, he has other recourse besides reaching a
> plea bargain with the Government.  Namely, he can go to trial with
> the presumption of innocence and fight the charges as against
> him." *Id*. at 3.  According to Mr. Woodward, if Trump Employee

4 "wishes to become a cooperating Government witness, he has
already been advised that he may do so at any time." *Id.*

Chief Judge Boasberg made available independent counsel (the
First Assistant in the Federal Public Defender's Office for the
District of Columbia) to provide advice to Trump Employee 4
regarding potential conflicts.  On July 5, 2023, Trump Employee 4
informed Chief Judge Boasberg that he no longer wished to be
represented by Mr. Woodward and that, going forward, he wished
to be represented by the First Assistant Federal Defender.
Immediately after receiving new counsel, Trump Employee 4
retracted his prior false testimony and provided information that
implicated Nauta, De Oliveira, and Trump in efforts to delete
security camera footage, as set forth in the superseding indictment.

*Id.*  On August 25, 2023, Nauta filed a motion for leave to file a sur-reply, asserting that "the

Special Counsel only selectively cited the record in a manner that is misleading to the Court."

Nauta's Mot. for Leave to File Sur-Reply, *Florida case*, ECF No. 134 at 2.  Nauta requested a

week to submit his proposed sur-reply because he "must first seek relief from the United States

District Court for the District of Columbia to reference sealed proceedings, as well as from this

Court to reference discovery produced in this matter."  *Id.* at 2-3.

Shortly thereafter, the Government filed a Notice of Filing in the Florida case attaching

the Government's Response to Motion for Disclosure filed in *In re Grand Jury Subpoena*, which

stated that Woodward had already filed a motion seeking either the unsealing of the grand jury

materials, or alternatively for the Court to "authorize the sealed disclosure of the record in this

matter."  *See* Notice of Filing Ex. 1, ECF No. 136-1.  In its response, the Government stated that

it "does not oppose the public filing in the Florida case of record materials."  *Id.*

With its Notice of Filing in the Florida case, the Government also submitted:

(1)     Its *ex parte* motion seeking authorization to "disclose to the court
in the Florida case all information related to the conflicts hearing,
including the fact and dates of the hearing, the resulting
appointment of AFPD [redacted] to represent [redacted], and, if
necessary, any filings, orders, or transcripts associated with the

conflicts hearing," *see* Mot. for Order Authorizing Disclosure, *In re Grand Jury Subpoena* (July 30, 2023);

(2)     Chief Judge Boasberg's order granting the Government's motion and authorizing it to disclose "all information related to the conflicts hearing conducted by this Court on June 30 and July 5, 2023" in the Florida case, *see* July 31, 2023 Minute Order, *In re Grand Jury Subpoena*; and

(3)     Trump Employee 4's response to the Government's motion for a conflicts hearing in the grand jury proceedings with limited redactions to individuals' names, *see* Response to Mot. for Conflicts Hr'g, *In re Grand Jury Subpoena*, June 30, 2023.

## ARGUMENT

The First Amendment and common law rights of access to court records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.). Nowhere is the maintenance of integrity and legitimacy more important than in a case like this one, involving the historic and closely-watched prosecution of a former President and his co-defendants for unlawful disclosure of classified records and conspiracy to obstruct the Government's investigation.

While confidentiality of these proceedings may have once been necessary pursuant to Federal Criminal Rule of Procedure 6(e)(6) to protect the grand jury investigation, the Government has now officially acknowledged and disclosed substantial information about these proceedings in the Florida case. Rule 6(e)(6) therefore "allows for their release" because "sealing them is no longer 'necessary' to protect grand-jury secrets." *In re Press Appl. for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings Concerning Former Vice President Mike Pence*, 2023 U.S. Dist. LEXIS 101128, *8 (D.D.C. June 9, 2023) ("*In re Pence*"). Under the Constitution and the common law, the Court should unseal the case and all

filings, which Trump Employee 4 has requested, and which the Government has already disclosed information about in the Florida case with this Court's authorization.

I.      **The Court Should Unseal *In re Grand Jury Subpoena* Under The First Amendment Right Of Access.**

"The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). "First the court must determine whether a qualified First Amendment right of public access exists. If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up). Courts follow the "experience and logic" test to determine where the constitutional right of access right to records or a proceeding. *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986). Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the functioning of the particular process." *Id*. at 8.

As is generally known, "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). In a similar recent case, Chief Judge Boasberg ordered the unsealing of certain filings in proceedings ancillary to another grand jury investigation into Trump and the January 6, 2021 riot at the United States Capitol where the subpoenaed witness, former Vice President Mike Pence, had already publicly acknowledged the substance of the proceedings in a televised interview. *See In re Pence*, 2023 U.S. Dist. LEXIS 101128, at *8. Pence had disclosed the substantive details about the proceeding, namely "his constitutional challenge to the subpoena, this Court's partial rejection of that challenge, and his intent to testify before the grand jury." *In re Pence*, 2023 U.S. Dist. LEXIS 101128, at *8. Relying on D.C. Circuit precedent establishing Rule 6(e)(6) did not require secrecy if the grand jury information

had been officially acknowledged, the Chief Judge determined continued sealing was "longer 'necessary' to protect grand-jury secrets" and directed release of certain filings.  *Id.*[1]

Here, the Government has already disclosed it "filed a motion for a conflicts hearing" and filed a redacted version of Trump Employee 4's response to that motion.  *See* Reply in Further Support of Gov't's Mot. for *Garcia* Hr'g, *Florida case*, ECF No. 129 at 3-4; Notice of Filing Ex. 1, *id.*, ECF No. 136-1.  The Government also disclosed that, upon consideration of its motion, "Chief Judge Boasberg made available independent counsel . . . to provide advice to Trump Employee 4 regarding potential conflicts" and that "on July 5, 2023, Trump Employee 4 informed Chief Judge Boasberg that he no longer wished to be represented by Mr. Woodward." *See* Reply in Further Support of Gov't's Mot. for *Garcia* Hr'g, *id.*, ECF No. 129 at 3-4.  The Government also asserts that Trump Employee 4's testimony changed after retaining new counsel, which Nauta denies.  *Id.*

These disclosures amount to a "disclosure by a grand jury witness that the Circuit has found sufficient to make secrecy no longer necessary."  *In re Pence*, 2023 U.S. Dist. LEXIS 101128, at \*13 (cleaned up).  Moreover, the parties agree that they should not be restricted from disclosing the *In re Grand Jury Subpoena* proceedings in another action, and Chief Judge Boasberg has already permitted the Government to disclose "all information related to the

---

[1] Additionally, in another matter concerning a subpoena for Trump's communications served on Twitter, Inc., in connection with a grand jury investigation, the D.C. Circuit recently released a redacted version of its decision and at least part of its docket.  *See In re Sealed Case*, No. 23-5044 (D.C. Cir.).  The D.C. Circuit also issued an order, *sua sponte*, (1) requiring that the parties show cause why the "sealed merits briefs in this case . . . and the audio recording and transcript of the joint session of the oral argument should not be unsealed," (2) directing the Government to show cause "why the *ex parte* appellee brief and the audio recording and transcript of the *ex parte* session of the oral argument should not be unsealed," and (3) reminding counsel of their obligation "to 'promptly notify the Court when it is no longer necessary to maintain the record or portions of the record under seal,'" which is required under D.C. Cir. Rule 47.1(f)(4).  Minute Order, *In re Sealed Case*, No. 23-5044 (D.C. Cir. Aug. 16, 2023).

conflicts hearing conducted by this Court on June 30 and July 5, 2023." *See* July 31, 2023
Minute Order, *In re Grand Jury Subpoena*; *see also* Notice of Filing Ex. 1, *Florida case*.
Complete secrecy no longer advances the interests underlying Rule 6(e)(6).

Given the Government's official acknowledgement of *In re Grand Jury Subpoena*, to
overcome the presumptive right of access to the matter, the Government must demonstrate that:

a. There is a substantial probability of prejudice to a compelling interest if
the right is not limited. *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984); *Richmond Newspapers*, 448 U.S. at 580-81.

b. There is no alternative to a limitation of the access right that will
adequately protect against the threatened harm. *Press-Enterprise II*, 478
U.S. at 13-14; *Washington Post v. Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

c. Restricting access will effectively protect against the threatened harm.
*Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

d. The restriction on access is narrowly tailored to minimize the harm to the
public's access rights. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*,
935 F.2d at 287; *cf. Shelton v. Tucker*, 364 U.S. 479, 488 (1960)
("legitimate and substantial" interests "cannot be pursued by means that
broadly stifle fundamental personal liberties").

The Government cannot show that continued sealing is necessary to prevent harm to a
compelling state interest, let alone that there is no alternative to continued sealing that will
prevent that purported harm, or that continued sealing of entire documents – rather than releasing
those documents with properly targeted redactions – is narrowly tailored to preventing that
alleged harm. *See Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991)
(concluding that "the government did not demonstrate a compelling interest to justify sealing"
court record where, *inter alia*, "disclosure of [its] contents . . . would only have confirmed to the
public what was already validated by an official source"). The case should be unsealed with

only limited redactions to protect information that is still properly subject to Rule 6(e)(6).  *In re Pence*, 2023 U.S. Dist. LEXIS 101128, at *1.

Dockets are also judicial records subject to the public right of access.  *Leopold v. United States*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) ("Although judges do not always rely upon dockets themselves in reaching decisions, dockets are nonetheless judicial records because they are created and kept by courts for the purpose of memorializing or recording matters of legal significance.") (cleaned up).  As the Second Circuit has explained, and D.C. Circuit has agreed, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also Leopold*, 964 F.3d at 1129 (quoting same with approval).[2]  The ability of the public and press to understand and monitor judicial proceedings—a central purpose of the access rights—is "merely theoretical if the information provided by docket sheets were inaccessible." *Id.*[3]

Because the First Amendment right of access applies to the docket and other sealed judicial records, and there are no findings on the public record demonstrating that blanket

_____

[2] *Accord United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (dockets are subject to First Amendment right of access); *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("case dockets maintained by the clerk of the district court are public records"); *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) (reversing order sealing docket entries); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (same).

[3] Fifteen years ago, following an investigation led by the Reporters Committee for Freedom of the Press revealing that no public online docket existed for 469 criminal cases in this District over a five-year period, then-Chief Judge Thomas Hogan spearheaded a vote by the U.S. Judicial Conference resulting in recommendations that all federal trial courts list all sealed dockets online. *See Conference recommends change to secret dockets*, Reporters Comm. for Freedom of the Press (Mar. 13, 2007), https://www.rcfp.org/conference-recommends-change-secret-dockets/. Judge Hogan commented that the Reporters Committee "did a good favor for us in discovering" these secret dockets. *Id.*

withholding is essential to preserving any higher values—and to the contrary, the public record here demonstrates the parties agree such blanket secrecy is unnecessary—the Court should promptly grant the Press Coalition's motion for access.

## II. The Court Should Unseal *In re Grand Jury Subpoena* Under The Common Law Right Of Access.

The Court also should unseal *In re Grand Jury Subpoena* under the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife*, 865 F.3d at 663. Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *Id.* at 665-69. If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted by a party seeking to seal the records. 650 F.2d 293, 317-21 (D.C. Cir. 1980).

Here, there can be no doubt that the records at issue are judicial records, and any categorical displacement of a common-law right to access these records by Rule 6(e)(6) is inapplicable now that the proceedings have been officially acknowledged. *See In re Pence*, 2023 U.S. Dist. LEXIS 101128 at *8 (noting there is a "common-law right of access to documents in ancillary proceedings" to a grand jury investigation and that Rule 6(e)(6) permits release "once sealing them is no longer 'necessary' to protect grand-jury secrets"). Because the public has a presumptive right of access to the judicial records in *In re Grand Jury Subpoena* under the common law, the Court should release those records unless the Government rebuts the strong presumption under *Hubbard* and *Metlife*. The Government cannot do so given the extensive amount of information about the public prosecution and these related conflicts proceedings. *See*

11

*In re New York Times Co.*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008) (ordering the Government to release records with limited redactions because the "public has made a strong showing of need for the materials, much of the information is already in the public forum, and there is no possibility of prejudice to an investigation or a future defendant").

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court unseal *In re Grand Jury Subpoena*, including the docket and any other judicial records submitted in this matter for which there is no longer a compelling need for secrecy.

Dated:  August 29, 2023          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August, 2023, I caused true and correct copies of

the foregoing to be served via electronic mail and U.S. Mail on the following:

James I. Pearce
J.P. Cooney
Raymond N. Hulser
Cecil W. VanDevender
John M Pellettieri
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Room B-206
Washington, DC 20530

Elizabeth J. Shapiro
Leslie Cooper Vigen
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

*Counsel for the United States*

Stanley E. Woodward
Stan M. Brand
Brand Woodward Law, LP
400 Fifth Street, Northwest Suite 300
Washington, DC 20001
stanley@brandwoodwardlaw.com

*Counsel for Trump Employee 4*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)