UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE GRAND JURY SUBPOENA GJ 42-67 | ) ) ) ) ) ) ) | CASE NO. 23-gj-___  UNDER SEAL  GRAND JURY NO. 22-6 |

## MOTION FOR A CONFLICTS HEARING

The government requests that the Court hold a hearing to conduct an inquiry into potential conflicts of interest that may arise from attorney Stanley Woodward, Jr.'s simultaneous representation of ▇▇▇▇▇▇▇ and Waltine Nauta. ▇▇▇▇ testified before a grand jury sitting in this district and is currently a target of the grand jury's investigation; Nauta is a defendant in a related case in the Southern District of Florida with co-defendant Donald J. Trump. Woodward's concurrent representation of ▇▇▇▇ and Nauta may present a conflict because, according to substantial evidence gathered to date, ▇▇▇▇ has information about additional obstructive acts that would incriminate Nauta, Trump, and others, and ▇▇▇▇ has put himself at risk of criminal charges by falsely denying that information under oath before the grand jury.

Consistent with its responsibility to notify the Court of potential conflicts, the government apprises the Court of the potential conflict so that it may conduct an inquiry to ensure the integrity of the grand jury's investigation and protect the interests of ▇▇▇▇ as a witness and target. The Court should conduct a colloquy with ▇▇▇▇ to advise him of potential conflicts and should appoint independent

counsel to be present at the hearing and available to advise ▆▆▆ regarding the

potential conflicts. The Court should provide ▆▆▆, if he wishes, an opportunity

to retain new counsel or, if appropriate, provide ▆▆▆ with court-appointed

counsel. If ▆▆▆ indicates that he wants to retain Woodward as his counsel, the

Court should determine whether ▆▆▆ decision to retain Woodward despite

potential conflicts is fully informed. And if the Court determines that any waiver of

conflict-free counsel is knowing and voluntary, the Court should evaluate whether

to accept that waiver and permit Woodward's concurrent representation of ▆▆▆

and Nauta or reject that waiver and require that ▆▆▆ obtain new counsel.[1]

## BACKGROUND

A grand jury in this district investigated the unlawful retention of national

defense information by former president Donald J. Trump and the obstruction of

justice by both Trump and Waltine Nauta. On June 8, 2023, a grand jury in the

Southern District of Florida returned a 38-count indictment against Trump for

unlawful retention of national defense information and against Trump and Nauta

for obstruction of justice.[2] The grand jury in this district continues to investigate

---

[1] The government has simultaneously filed a motion for leave to notify the district court in the Southern District of Florida presiding over the criminal case against Trump and Nauta about this motion and provide the court with a copy.

[2] Trump is charged with unlawfully retaining national defense information, in violation of 18 U.S.C. § 793(e) (Counts 1-31). Trump and Nauta are charged jointly with conspiring to obstruct justice, in violation of 18 U.S.C. § 1512(k) (Count 32); obstructing justice, in violation of 18 U.S.C. §§ 1512(b)(2)(A) and (c)(1) (Counts 33 and 34); concealing a document in a federal investigation, in violation of 18 U.S.C. § 1519 (Count 35); and a false statements concealment scheme, in violation of 18 U.S.C. § 1001(a)(1) (Count 36). In addition, Trump and Nauta are each

further obstructive activity, including activity by individuals who are not yet charged.[3]

Nauta is represented by Stanley Woodward, Jr., who also represents at least seven other individuals who have been questioned in connection with the grand jury's investigation. Those individuals include ███████████, the director of information technology for ████████████████████████████████████ Mar-a-Lago. ████████ responsibilities include servicing and maintaining Mar-a-Lago's security cameras. As described in further detail in an *ex parte* supplement to this motion, the government has gathered direct evidence, ██████████████████████ ████████ that ████████ possesses information about obstructive acts by Nauta and others, including a Mar-a-Lago employee, that took place after the government informed the Trump Organization that it would be subpoenaing surveillance footage from Mar-a-Lago. The evidence shows that in June 2022, Nauta, Trump, and a Mar-a-Lago employee took steps to determine—through ████████—whether surveillance footage could be deleted. The government has reliable, corroborated evidence ████ ████████████████ that ████████ was approached about the surveillance cameras and footage at Mar-a-Lago.

---

charged with making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts 37 and 38, respectively).

   [3] It is well established that, even post-indictment, "the government may continue to use the grand jury process if there is an ongoing investigation that could possibly lead to further charges against the defendant or against other uncharged individuals." *United States v. Sitzmann*, 74 F. Supp. 3d 96, 123 (D.D.C. 2014); *see In re Grand Jury Proceedings*, 201 F. Supp. 2d 5, 12 n.4 (D.D.C. 1999); *accord United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009); *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998).

In February and March 2023, the government informed Woodward, orally

and in writing, that his concurrent representation of ██████ and Nauta raised a

potential conflict of interest. The government specifically informed Woodward that

the government believed ██████ had information that would incriminate Nauta.

Woodward informed the government that he was unaware of any testimony that

██████ would give that would incriminate Nauta and had advised ██████ and

Nauta of the government's position about a possible conflict. According to

Woodward, he did not have reason to believe his concurrent representation of

██████ and Nauta raised a conflict of interest.

When ██████ testified under oath before a grand jury in this district on

March 23, 2023, with Woodward acting as his counsel, he repeatedly denied or

claimed not to recall any contacts or conversations about the surveillance cameras

and footage at Mar-a-Lago, despite substantial evidence to the contrary. ██████

also provided an unusual response when he was advised at the outset of his

testimony that if a witness testifies that he does not recall something when, in fact,

he does recall it, that testimony is considered false. In response to that routine

admonition, ██████ asked, "How would you know if I can't recall or can't remember

any of that stuff?" ██████████████████ In addition, ██████ testified that an

attorney for Trump had put him in contact with Woodward, and that Woodward's

fees were being paid by Trump's political action committee, the Save America PAC.

Given the evidence that ██████ provided false testimony before the grand

jury, on June 20, 2023, pursuant to United States Justice Manual § 9-11.151, the

government advised Woodward that ██████ is a target of the investigation and a

putative defendant. ██████'s criminal exposure is a direct result of his sworn

denial that he has information about obstructive acts that would implicate Nauta

and others. The government accordingly requests that the Court hold a hearing to

address potential conflicts arising from Woodward's concurrent representation of

██████ and Nauta.

**ARGUMENT**

Woodward's concurrent representation of ██████ and Nauta raises a potential

conflict of interest and warrants a hearing.

## I.      Applicable Law

The Sixth Amendment guarantees a criminal defendant the right "to have

the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right

includes the right to counsel of choice, *i.e.*, "the right to be represented by an

otherwise qualified attorney whom that defendant can afford to hire, or who is

willing to represent the defendant even though he is without funds." *Caplin &*

*Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). It also includes a

"right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450

U.S. 261, 271 (1981). The right to conflict-free counsel "is subject to knowing and

voluntary waiver." *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 200 (D.C.

Cir. 2013). But the "essential aim" of the right to counsel "is to guarantee an

effective advocate for each criminal defendant rather than to ensure that a

defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v.*

*United States*, 486 U.S. 153, 159 (1988). Courts also "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. Thus, "a defendant's counsel-of-choice right may sometimes be trumped by a conflict of interest," and "a court may decline to accept a waiver if the conflict of interest jeopardizes the integrity of the proceedings." *Lopesierra-Gutierrez*, 708 F.3d at 200.

Courts have advised that the government should generally notify a court of "potential conflicts at the earliest possible moment." *United States v. Malpiedi*, 62 F.3d 465, 470 (2d Cir. 1995). Some courts describe this as an affirmative "duty" on the government "to bring the issue to the court's attention." *United States v. Tatum*, 943 F.3d 370, 379-80 (4th Cir. 1991); *see United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (same); *In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976) (same). When a potential conflict is brought to a court's attention, it triggers an "independent duty" by the court to "investigate." *Wheat*, 486 U.S. at 160; *see, e.g.*, *United States v. Caldwell*, 7 F.4th 191, 203 (4th Cir. 2021); *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019). Courts have discretion in conducting an inquiry but, as a general matter, should "inquire into the details" and "(1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired." *United States v. Lussier*, 71 F.3d 456, 462 (2d Cir. 1995). Courts in this district and

elsewhere regularly follow procedures along these lines. *See, e.g.*, *United States v. Raymond*, 21-CR-380, 2023 WL 2043147, at \*2 (D.D.C. Feb. 16, 2023); *United States v. Sutton*, No. 21-CR-0598, 2021 WL 5998384, at \*1 (D.D.C. Dec. 7, 2021) (citing other cases); *United States v. Bikundi*, 80 F. Supp. 3d 9, 15 (D.D.C. 2015); *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975). Given the difficulty of assessing conflicts pre-trial, district courts "must be allowed substantial latitude in refusing waivers of conflicts." *Wheat*, 486 U.S. at 162-63.

Courts apply these procedures when potential conflicts arise from concurrent representation of multiple grand jury witnesses, even though grand jury witnesses do not possess a right to assistance of counsel under the Sixth Amendment. *See In re Grand Jury Process, Doe*, 814 F.3d 906, 909 (8th Cir. 2015); *In re Grand Jury Investigation*, 182 F.3d 668, 670 (9th Cir. 1999); *In re Grand Jury Proc.*, 859 F.2d 1021, 1023-26 (1st Cir. 1988); *In re Investigation Before the February 1977, Lynchburg Grand Jury*, 563 F.2d 652, 654-58 (4th Cir. 1977) (*Lynchburg Grand Jury*); *In re Gopman*, 531 F.2d at 265-66; *In re Grand Jury Investigation*, 447 F. Supp. 2d 453, 455-66 (E.D. Pa. 2006); *Matter of Investigative Grand Jury Proc. on Apr. 10, 1979 & Continuing*, 480 F. Supp. 162, 164 (N.D. Ohio 1979); *In re Grand Jury Investigation*, 436 F. Supp. 818, 821 (W.D. Pa. 1977); *Matter of Grand Jury Proceedings*, 428 F. Supp. 273, 275-76 (E.D. Mich. 1976); *see also* Sara Sun Beale, et al., *Grand Jury Law and Practice* § 6:31 (2d ed. 2022); Susan W. Brenner & Lori E. Shaw, *Federal Grand Jury: A Guide to Law & Practice* § 22:6 (2d ed. 2022). Courts consider the integrity of the grand jury proceedings and the right of a witness to

7

consult with counsel of choice outside the grand jury, and evaluate whether a conflict exists and, if so, whether concurrent representation is appropriate despite a conflict. *See, e.g., In re Grand Jury Investigation*, 447 F. Supp. 2d at 455-66.[4]

## II.   The Court Should Hold a Hearing to Address Potential Conflicts

As explained in more detail in the government's *ex parte* supplement, the government's investigation points to a potential conflict of interest in Woodward's concurrent representation of ██████ and Nauta. ████████████████████ ████████████████████████████████████. ██████'s current posture—denying information in a manner that is contrary to substantial evidence—creates significant legal risks for ██████ himself, and an appropriate judicial inquiry can fully and candidly impress upon ██████ the risks his current posture raises. These circumstances warrant a colloquy with ██████ fully apprising him of the circumstances, as well as the opportunity to consult with independent counsel to advise him of the potential risks from Woodward's simultaneous representation of Nauta.

---

[4] The D.C. Circuit's pre-*Wheat* decision in *In re Investigation Before April 1975 Grand Jury*, 531 F.2d 600 (D.C. Cir. 1976), does not cast doubt on this well-established procedure. There, the court of appeals reversed an order disqualifying an attorney "from representing more than one of the over one hundred" union members "who have been or may be subpoenaed before" the grand jury, emphasizing "how little we can discern from the record as to the precise nature of the asserted conflicting interests." *Id.* at 603, 607. Here, by contrast, the government requests a hearing precisely so that the Court can ascertain the precise nature of any conflicting interests before making any findings regarding disqualification.

The D.C. Rules of Professional Conduct provide that a conflict of interest arises when a lawyer's representation of a client "will be or is likely to be adversely affected by representation of another client," or if "[r]epresentation of another client will be or is likely to be adversely affected by such representation." D.C. Rules of Professional Conduct 1.7(b)(2)-(3).[5] The Model Rules of Professional Responsibility

_____

[5] The D.C. Rules of Professional Conduct provide:

(b)    Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

(1)    That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;

(2)    Such representation will be or is likely to be adversely affected by representation of another client;

(3)    Representation of another client will be or is likely to be adversely affected by such representation;

(4)    The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

(c)    A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if

(1)    Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and

similarly provide that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibility to another client." Model Rules Prof'l Conduct R. 1.7(a)(2). At a minimum, there is a substantial risk that Woodward's concurrent representation of Nauta and ████████ will materially limit Woodward's responsibilities to one or both of his clients.

A conflict may arise during an investigation if a lawyer's "responsibility to his other clients prevents the lawyer from exploring with the prosecutor whether it might be in the interest of one witness to cooperate with the grand jury or to seek immunity if the witness's cooperation or testimony would be detrimental to the lawyer's other client." Sara Sun Beale, et al., *Grand Jury Law and Practice* § 6:31 (2d ed. 2022). "Professional ethics prevent [an attorney] from advising a witness to seek immunity or leniency when the quid pro quo is testimony damning to his other clients, to whom he also owes a duty of undivided fidelity[.]" *Lynchburg Grand Jury*, 563 F.2d at 657. In many cases, however, that advice is precisely what the client needs to hear, even, or perhaps especially, when it "is unwelcome" advice that "the client, as a personal matter, does not want to hear or follow." *In re Investigative Grand Jury Proceedings on April 10, 1979 and Continuing*, 480 F. Supp. at 167.

---

       (2)     The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

D.C. Rules of Professional Responsibility 1.7.

"[P]art of a lawyer's duty to a client is to give that advice which, in light of the facts and applicable legal principles, best suits the client's individual interests," and that duty "can be fulfilled only where the lawyer can advise the client without attention to or concern about the interests of others." *Id.* Here, ███████ should receive candid, even if unwelcome, advice on whether it would be in his best interests to disavow his prior, apparently false testimony, or whether he should, instead, continue to deny facts that may implicate Nauta. Woodward's ability to provide that candid advice is limited by his "equivalent duty of zealous representation and fidelity to" Nauta, *id.*, given that ██████'s truthful testimony would have the effect of implicating Nauta.

Concerns raised by potential conflicts can be "further heightened by the financial dynamics of the joint representation," where, for example, a client "did not independently select the" attorney but instead had the attorney "pre-selected for them by the attorney to the [person] who is the central focus of the grand jury proceedings." *In re Grand Jury Investigation*, 447 F. Supp. 2d at 460. "The structure of this financial arrangement therefore imparts a desire, however sub-consciously embedded, to protect (from indictment) the public official who pays the clients' legal fees." *Id.*; *see* Peter W. Tague, *Multiple Representation of Targets and Witnesses During a Grand Jury Investigation*, 17 Am. Crim. L. Rev. 301, 326-27 (1980) (observing that a "client may in fact have information that would damn his co-clients, but which he is afraid to reveal to the attorney representing all for fear that the attorney will then share that information with the co-clients," potentially

exposing him to "ostraci[sm] by his co-clients" or "dismissal from employment"). As mentioned above, ███████ testified that he was referred to Woodward by an attorney for Trump and that Woodward's fees were being paid by Trump's Save America PAC. All of these circumstances weigh in favor of conducting an appropriate conflicts inquiry with ███████, particularly now that ███████ has received a target letter.

The government accordingly requests that the Court hold a hearing to determine whether Woodward's concurrent representation of both ███████ and Nauta presents a conflict of interest, and if so, whether the conflict is waivable. If the Court finds that a conflict exists, the Court should engage in a thorough colloquy with ███████ to ensure that he understands the details of Woodward's conflict of interest and the potential perils of such a conflict. The Court should also appoint conflicts counsel to be present at the hearing to afford ███████ the opportunity to confer with outside counsel if desired. If ███████ indicates that he intends to waive any conflicts, the Court should carefully evaluate that decision to determine whether any waiver is knowing and voluntary. And the Court should evaluate whether it may be appropriate to reject any proffered waiver and disqualify chosen counsel to protect the integrity of the proceedings.

## CONCLUSION

For the reasons stated above, the government requests that the Court hold a hearing to inquire into potential conflicts arising from Woodwards's concurrent representation of ███████ and Nauta.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *John M. Pellettieri*
John M. Pellettieri (N.Y. Bar No. 4145371)
James I. Pearce (N.C. Bar No. 44691)
Cecil VanDevender (Tenn. Bar No. 029700)
Assistant Special Counsels

June 27, 2023