IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In the Matter of Grand Jury No. 22-06
Subpoena #42-67

UNITED STATES OF AMERICA,

v.

▮▮▮▮▮▮▮.

)
)
)
)
)
)
)
)
)

**FILED UNDER SEAL**

## RESPONSE TO MOTION FOR CONFLICTS HEARING

Counsel takes allegations of the existence of a conflict of interest that may affect the diligent and competent representation of a client extremely seriously.  However, the government is incorrect in making any assertion that any alleged conflicts that may exist amount to non-waivable conflicts as defined by District of Columbia Rules of Professional Conduct Rule 1.7(a).  Further, counsel strongly disputes the assertion that any conflict of interest exists.  Neither counsel's concurrent representations of Walt Nauta and ▮▮▮▮▮▮, nor Save America PAC's payment for Mr. Woodward's legal services on behalf of ▮▮▮▮▮▮ create any conflicts of interest under the rules.  Counsel welcomes the Court's inquiry into Mr. Woodward's representation of ▮▮▮▮▮▮, as the Court will very easily be able to determine that Mr. Woodward is providing competent, diligent, and conflict-free representation to ▮▮▮▮▮.

At the outset, the allegation that ▮▮▮▮▮ has lied under oath before a grand jury is unfounded.  The government seeks to portray a mundane initial question about the grand jury process as evidence of a guilty conscience that simply does not exist.  Government Filing, at 4 ("▮▮▮▮ also provided an unusual response when he was advised at the outset of his testimony that if a witness testifies that he does not recall something when, in fact, he does recall it, that

testimony is considered false. . ." ▮ asked, 'How would you know if I can't recall or can't remember any of that stuff.'"). However, a mere cursory review of ▮'s grand jury transcript will reveal, *inter alia*, that this was ▮'s first appearance before any grand jury, and that questions about the grand jury process were encouraged by government counsel. Further, such a statement is a common tactic applied by the government intended to make witnesses carefully consider exactly how they respond to the government's inquiry and fearful of having to say that they do not recall certain information when asked by the government. *See id.* (referring to government's question as a "routine admonition"). For the government to portray a clarifying question about a process ▮ was wholly unfamiliar with as evidence of anything beyond clarification about the process is ludicrous, especially as ▮ was very likely instructed to ask such clarifying questions if questions or statements were unclear to him.

Beyond this claim, the government provides no information to support their claim that ▮ has provided false testimony to the grand jury. While counsel does not preclude that the government may have provided more information to the Court *ex parte*, the government's current representation that ▮ has clearly presented false or conflicting information to the grand jury such that he is doomed for prison if he refuses to become a cooperating witness before the grand jury is wholly unsupported by any information available to counsel. Further, even if ▮ did provide conflicting information to the grand jury such that could expose him to criminal charges, he has other recourse besides reaching a plea bargain with the government. Namely, he can go to trial with the presumption of innocence and fight the charges as against him. If ▮ wishes to become a cooperating government witness, he has already been advised that he may do so at any time.

The government seeks to portray two different aspects of Mr. Woodward's representation of ▮▮▮▮ as conflicts of interest that should entirely preclude Mr. Woodward from representing ▮▮▮▮: 1.) that the Save America PAC is paying for Mr. Woodward's legal fees, and 2.) that Mr. Woodward represents Walt Nauta about whom the government alleges ▮ ▮▮▮ possesses information negative to Mr. Nauta's case in Florida. While the government seeks to demonstrate that both conflicts are non-waivable, such a position has no teeth. Further, counsel has no reason to believe that any conflict even exists in his representation of ▮ ▮▮▮.

At the outset, an agreement for a third-party to cover a client's legal is a common and uncontroversial practice, so long as certain procedures outlined by the D.C. Rules are followed. *See* District of Columbia Rule 1.8, Comment 10 (". . . lawyers are prohibited from accepting or continuing [third-party payment for a client's legal services] *unless* the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client." (emphasis added)). While the government has often sought to imply an illicit purpose for the Save America PAC covering the legal costs of certain grand jury witnesses, the truth has always been very simple and legitimate: many of the grand jury witnesses, including ▮▮▮▮, are only subject to this investigation by virtue of their employment with entities related to or owned by Donald Trump. Save America PAC has placed no conditions on the provision of legal services to their employees. Ultimately and in compliance with Rule 1.8, ▮▮▮▮ was advised that Save America PAC would pay his legal fees, that ▮▮▮▮ could pursue other counsel than Mr. Woodward if he so desired, that Save America PAC was not Mr. Woodward's client, that ▮▮▮▮ was Mr. Woodward's client,

3

and that ▇▇▇▇ could always make the decisions relating to the trajectory of ▇▇▇▇'s grand jury testimony.

While the government seeks to also portray the existence of a non-waivable conflict due to the concurrent representation of Mr. Nauta and ▇▇▇▇, such an assertion is also not backed by the Rules. Non-waivable conflicts are a very specific type of conflict, as made clear by the rules. *See* District of Columbia Rules of Professional Conduct Rule 1.7(a) ("A lawyer shall not advance two or more adverse positions in the same matters."). Further, the rules make clear that such conflicts are a very narrow type of conflict, whereby there is no possible way an attorney can give competent and diligent representation to both clients; that a lawyer may take positions in a different matter that is adverse to a client is not a waivable conflict. *See* District of Columbia Rules of Professional Conduct Rule 1.7, Comment 4 ("The absolute prohibition of paragraph (a) applies only to situations in which a lawyer would be called upon to espouse adverse positions for different clients in the same matter. It is for this reason that paragraph (a) refers to adversity with respect to a 'position taken or to be taken' in a matter rather than adversity with respect to the matter or the entire representation. This approach is intended to reduce the costs of litigation in other representations where parties have common, non-adverse interests on certain issues, but have adverse (or contingently or possibly adverse) positions with respect to other issues. . .").

The government presents a broad swath of Sixth Amendment case law about a witness's right to counsel of choice, effective advocacy, and a requirement of the government to notify the court at the earliest possible moment of potential conflicts of interest that arise during grand jury representation, arguing that these cases clearly preclude Mr. Woodward's representation of ▇▇▇▇. Government Filing, pp. 6-7. However, the case law they cite does not even support

4

this position, as this Circuit has noted that non-waivable conflicts are an extremely narrow type of conflicts of interest, and usually require that an attorney be involved in the underlying conduct for which their client is being prosecuted. *See United States v. Lopesierra-Gutierrez*, 708 F. 3d 193, 200 (D.C. Cir. 2013) ("[Defendant's ineffective assistance of counsel on the basis of conflicts of interest that Defendant had waived] argument relies heavily on a line of Second Circuit decisions that have defined a very narrow category of cases in which a conflict of interest is never subject to waiver. . . because the conflict so permeates the defense that no meaningful waiver can be obtained." (internal quotations omitted)). Ultimately, the D.C. Circuit noted that their view of non-waivable conflicts is much narrower than the Second Circuit's, concluding that non-waivable conflicts require the conclusion that, "no rational defendant would knowingly and voluntarily desire the attorney's representation." *See id.* at 201 (quoting *United States v. Martinez*, 143 F.3d 1266, 1270 (9th Cir. 1998). Further, it should be noted that the cases cited by the government in this matter concern conduct that goes well beyond any conduct alleged against counsel, namely criminal activity related to that for which counsel represents client(s). The government has not alleged such activity, meaning their offered cases are distinguishable.

Ultimately, this is little more than a last-ditch effort to pressure ███████ with vague (and likely nonexistent) criminal conduct in the hopes that ███████ will agree to become a witness cooperating with the government in other matters. *See* Government Filing, p. 10 ("A conflict may arise during an investigation if a lawyer's 'responsibility to his other clients prevents the lawyer from exploring with the prosecutor whether it might be in the interest of one witness to cooperate with the grand jury or to seek immunity if the witness's cooperation or testimony would be detrimental to the lawyer's other client.' [] 'Professional ethics prevent [an attorney] from advising a witness to seek immunity or leniency when the quid pro quo is

5

testimony damning to his other clients, to whom he also owes a duty of undivided fidelity[.] [] In many cases, however, that advice is precisely what the client needs to hear, even, or perhaps especially, when it 'is unwelcome' advice that 'the client, as a personal matter, does not want to hear or follow.' [] (internal citations omitted)). Ultimately, ▮▮▮▮▮ has been advised by counsel that he may, at any time, seek new counsel, and that includes if he ultimately decided he wanted to cooperate with the government. However, ▮▮▮▮▮ has not signified any such desire and that means counsel for ▮▮▮▮▮ can continue to represent ▮▮▮▮▮ both diligently and competently.[1]

[SIGNATURE ON NEXT PAGE]

---

[1] *See* D.C. Rules of Professional Conduct Rules 1.1 ("Competency), 1.3 ("Diligence").

Dated: June 30, 2023                              Respectfully submitted,

                                                  /s/ Stanley E. Woodward, Jr.
                                                  Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                                  Stan M. Brand (D.C. Bar No. 213082)
                                                  BRAND WOODWARD LAW, LP
                                                  400 Fifth Street, Northwest
                                                  Washington, District of Columbia  20001
                                                  202-996-7447 (telephone)
                                                  202-996-0113 (facsimile)
                                                  Stanley@BrandWoodwardLaw.com

                                                  *Counsel for* ▆▆▆▆▆▆▆

**CERTIFICATE OF SERVICE**

On June 30, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was provided electronically to the court and served by electronic mail upon government counsel.

                                                    */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com