UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PRESS APPLICATION FOR UNSEALING OF IN RE GRAND JURY SUBPOENA, GJ 42-67 | Misc. No. 23-86 (JEB) |

**MEMORANDUM OPINION**

In an attention-grabbing development last summer in the classified-documents case against former President Donald J. Trump, the Government raised a potential conflicts issue. This Court thus held a hearing to determine whether attorney Stanley Woodward's simultaneous representation of Waltine Nauta — one of the former President's co-defendants — and an individual referred to as "Trump Employee 4" gave rise to any ethical conflicts. In the course of seeking a similar conflicts hearing in the Southern District of Florida some days later, the Government publicly released many but not all of the documents related to the hearing conducted in D.C. Believing that newsworthy information may lie behind closed doors, a Press Coalition now seeks to unseal the remaining materials. The Government, for its part, concedes that most of the documents in dispute can be released with minor redactions. It, however, strongly opposes the Application as to one of the filings made in support of its request for a hearing. Although the Court has ordered much material to be released, it draws the line at this last request.

**I.  Background**

In November 2022, Attorney General Merrick B. Garland appointed Jack Smith as Special Counsel to investigate Trump for allegedly moving classified documents out of Government hands and to the Mar-a-Lago Club in Palm Beach, Florida. See Press Release,

1

Dep't of Justice, Appointment of Special Counsel (Nov. 18, 2022), https://perma.cc/G5K2-ZN7T; Trump v. United States, 54 F.4th 689, 694–96 (11th Cir. 2022) (describing Government's discovery of "over one hundred documents marked confidential, secret, or top secret" that Trump had not produced in response to a subpoena).  That appointment led to a grand-jury investigation, which in turn resulted in an indictment of Trump, Nauta, and (later on) Carlos de Oliveira.

### A. Conflicts Hearing Before This Court

In late June 2023, shortly after the first indictment was issued, the Government asked this Court to hold a conflicts hearing concerning Nauta's attorney, Stanley Woodward.  In re Grand Jury Subpoena GJ 42-67, No. 23-46 (D.D.C. June 27, 2023).  It cited a potential conflict of interest arising from Woodward's simultaneous representation of Nauta and an individual identified in public documents as Trump Employee 4.  See ECF No. 1 (Press Application) at 4.  The Court granted the Government's request and "made available independent counsel . . . to provide advice to Trump Employee 4 regarding potential conflicts."  Id. at 5.  In early July, Trump Employee 4 decided to drop Woodward and to instead continue on with the conflict counsel — namely, the First Assistant Public Defender in this district.  Id.  He went on to retract his prior testimony — in which he had denied having any information about the obstruction charged in the indictment — and gave "information that implicated Nauta, de Oliveira, and Trump in efforts to delete security camera footage."  Id. at 4–5.

### B. Request For Hearing In Florida Case

All of this remained under wraps until August 2023, when the United States asked the court in Florida to conduct a similar hearing to inquire into potential conflicts that may arise from Woodward's representation of Nauta and "three individuals the Government may call to testify at the trial."  Id. at 3.  To support this request, and with authorization from this Court, the

Government filed a brief disclosing the basic facts of the conflicts hearing conducted by this Court in late June and early July. Id. at 4; United States v. Trump et al., No 23-80101 (S.D. Fla. 2023), ECF No. 129 (Reply in Support of Hearing) at 3–4. A few days later, it also filed a Notice of Filing in Florida that included many of the documents filed here. See Trump et al., ECF No. 136-1 (Exhibits to Notice of Filing). Nauta subsequently filed a Surreply to the Government's Response and, again with this Court's authorization, attached the transcripts of the hearing conducted before this Court. See Press App. at 5; Trump et al., ECF Nos. 144-2, 144-3 (Transcript Exhibits to Surreply).

All in all, the following materials have been filed with appropriate redactions on the public docket in the Florida case: 1) the Government's initial Motion to Disclose the basic facts of the hearing conducted before this Court, 2) this Court's Order granting this initial Motion, 3) Trump Employee 4's Response to the Government's original Motion for a Conflicts Hearing, 4) the Government's Response to Nauta's Motion to Disclose the transcripts from the D.C. conflicts hearing, and 5) the transcripts themselves. See Trump et al., ECF Nos. 136-1, 144-B, 144-C. The remaining materials, including the docket itself, have not been disclosed.

   C. The Press's Application

Wishing to obtain those documents that remain under seal in whole or in part, a Press Coalition now asks this Court to order the Government to release them. The Government moved to file its Opposition under seal, see ECF No. 6 (Mot. for Leave to File), which the Court granted. See Minute Order of Nov. 1, 2023. As it turns out, the Government agrees that nearly all of the still-sealed materials can be filed on the public docket with minimal redactions and this week has done just that. See ECF No. 8 (Order to File Documents on Public Docket) at 1–2; ECF No. 9 (Government Notice of Filing). Because the Press and the Government nevertheless

3

disagree as to one of the remaining filings — a Supplement filed in support of the Motion for a Conflicts Hearing — and related attachments, the Court will now consider whether those documents should be unsealed, too.  In the course of doing so, the Court will cite only portions of the sealed Opposition that divulge no protected grand-jury material.

**II.    Legal Framework**

    A.  Grand-Jury Secrecy

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm."  In re Grand Subpoena, Judith Miller, 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case (Dow Jones II), 199 F.3d 522, 526 (D.C. Cir. 2000)).  Witnesses "enter the grand jury room alone . . . .  No judge presides and none is present."  In re Motions of Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998).  Access to grand-jury materials turns on Federal Rule of Criminal Procedure 6(e)(2), which dictates that "[o]ther than witnesses, each person present . . . is forbidden from disclosing 'matters occurring before the grand jury.'"  Id. (quoting Fed. R. Crim. P. 6(e)(2), 6(e)(3)(A)(ii)); see also In re Sealed Case No. 99-3091, 192 F.3d 995, 1002 (D.C. Cir. 1999).  In this Circuit, courts, too, lack any "inherent authority" to release materials regarding matters occurring before the grand jury. McKeever v. Barr, 920 F.3d 842, 844, 850 (D.C. Cir. 2019).  This arrangement "safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." Id. at 844 (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)).

B.  Accessing Ancillary Proceedings

The grand jury's business may also call for "judicial proceedings relating to," but "at arm's length" from, that body, including the resolution of a grand-jury witness's "motion to . . . quash [a] subpoena" or her invocation "of a testimonial privilege."  Dow Jones I, 142 F.3d at 498.  Records of such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are governed by Rule 6(e)(6), which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under sealed <u>to the extent and as long as necessary</u> to prevent the unauthorized disclosure of a matter occurring before a grand jury."  (Emphasis added.)  Although Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary proceedings, see Dow Jones I, 142 F.3d at 500–04, the Rule allows for their release once sealing them is no longer "necessary" to protect grand-jury secrets.

In assessing the extent of such necessity, the Circuit has explained that Rule 6(e)(6)'s reference to "a matter occurring before a grand jury" protects "not only what has occurred and what is occurring, but also what is likely to occur" before that body.  Id. at 500.  The Rule therefore protects information in ancillary documents that reveals "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'"  Id. (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)).  Rule 6(e)(6) protection certainly "does not create a type of secrecy which is waived" as soon as "public disclosure occurs," but once "information is sufficiently widely known[,] . . . it has lost its character as Rule 6(e) material."  Id. at 505 (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  The Rule's secrecy

5

requirements therefore yield only "when there is no secrecy left to protect." In re Grand Jury Subpoena, Judith Miller (Miller II), 493 F.3d 152, 154 (D.C. Cir. 2007) (citation omitted).

### III.  Analysis

The Press acknowledges that Rule 6(e)(6) would normally protect the documents at issue here, but it contends that this is no longer the case because the Government "has now officially acknowledged and disclosed substantial information about these proceedings." Press App. at 6; In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former President Trump's Communications with His Attorneys, 2023 WL 5318267, at * 3 (D.D.C. Aug. 18, 2023) ("[D]isclosure may be permitted where once-protected information has already been disclosed by way of a judicial or other governmental proceeding."). Most importantly, the Government disclosed the basic facts of the conflicts hearing conducted by this Court, including that Trump Employee 4 changed his testimony after obtaining new representation. See Press App. at 8. Since "there is no secrecy left to protect," the Press reasons, Rule 6(e)(6) itself permits, and the First Amendment and common-law right of access demand, unsealing. Miller II, 493 F.3d at 154; Press App. at 7–12. The Government strongly opposes this ask, noting that the documents in dispute have not been made public in any way. See ECF No. 7 (Opposition to Press Application) at 8.

The Press's basic error lies in its assumption that all of the relevant materials are now subject to disclosure just because some of them are. Two recent decisions are particularly instructive. The first is this Court's Opinion in In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence, 2023 WL 3931384 (D.D.C. June 9, 2023). There, the Court agreed that records regarding a grand-jury-privilege dispute involving Vice President Pence could be partially released because Pence

6

himself had publicly discussed them. Id. at *4–6. Pence had acknowledged in public interviews, for instance, that he had mounted a constitutional challenge to the Government's subpoena calling him to testify before the grand jury. Id. at *4. At the same time, the Court held that these materials had to be redacted to withhold information that Pence had not revealed in his disclosures, such as the "specific testimony the grand jury sought from Pence." Id.

The second, from this Court's predecessor, is In re Press Application for Access to Jud. Recs. & Procs., 2023 U.S. Dist. LEXIS 104648 (D.D.C. Mar. 11, 2023). The press coalition in that case wanted to access records concerning a grand-jury subpoena issued to Trump, as well as a purported contempt proceeding to enforce that subpoena against the former President. Id. at *2–4. Much like the Press here, the coalition there pointed to the Government's public release of the subpoena itself to support its broader request, contending that "extensive public judicial disclosure of the events at issue" meant that all cognate documents were now subject to unsealing. Id. at *2. Since the Government had only publicly disclosed the subpoena, however, and had not "reveal[ed] the details of ancillary proceedings" related to enforcement of the subpoena, then-Chief Judge Howell denied the request. Id. at *5.

As these cases show, then, the scope of the disclosures that "remove" Rule 6(e) protections — whether these come from a witness or the Government — dictates the extent to which documents can be released. See Miller II, 493 F.3d at 154–55 (releasing only part of opinion and refusing to release "still-secret grand jury matters"). Because grand-jury materials can be unsealed "only to the extent they have been previously revealed," a limited disclosure should lead to only a limited unsealing of documents. Id. at 155.

Taking the disclosures made to date and the documents still in dispute together, the Court agrees with the Government that the disputed filings should remain under seal at this time.

These documents are "replete with still-secret matters that occurred before the grand jury," material that is well beyond the scope of the Government's disclosures in the Southern District of Florida. See Opp. at 8. Since this material does not come within the disclosures made thus far and has not been otherwise authoritatively disclosed by the Government or a grand-jury witness, "Rule 6(e) protections remain intact." In re New York Times Co., 2023 WL 2185826, at *10 (D.D.C. Feb. 23, 2023). As such, these materials "must be kept under seal" until an authoritative disclosure that covers this information is made. See Fed. R. Crim. P. 6(e)(6)

While the Press proposes "targeted redactions" as a possible cure, see Press App. at 9, this is "simply not possible" without running afoul of Rule 6(e) for the same reason as above — *i.e.*, because the information contained in these documents remains undisclosed. In re North, 16 F.3d at 1242. The grand-jury material is not just "woven tightly" with publicly disclosed material; it makes up nearly all of the disputed documents. See Dow Jones I, 142 F.3d at 505. Because these documents would "invariably and consistently touch on 'matters occurring before the grand jury'" that remain protected under Rule 6(e), the Court sees no way to release them absent near-total redactions. In re Press Application for Access to Jud. Recs. & Procs., 2023 U.S. Dist. LEXIS, at *7 (citation omitted). And as the Government rightly points out, such redactions would be so extensive that the resulting documents would be "largely meaningless" and of little use, since they would contain only information that has already been disclosed in other materials. See Opp. at 15. The Court thus concludes that the remaining documents have not been publicly disclosed by the Government and must therefore remain under seal under Rule 6(e), and that redactions would be impossible in any event.

## IV.     Conclusion

For the foregoing reasons, the Court will deny what remains of the Press's Application. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  November 29, 2023